# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v GUYTON

Docket No. 163700. Argued on application for leave to appeal April 1, 2022. Decided July 18, 2023.

Candace R. Guyton pleaded guilty in the Kent Circuit Court to one count of armed robbery, MCL 750.529. As part of the plea deal, the prosecution agreed not to pursue charges against defendant in an unrelated case and to recommend a sentence within the guidelines minimum range of 51 to 85 months in prison. The prosecutor also agreed to dismiss the supplemental information charging defendant as a third-offense habitual offender. However, the amended felony information wrongly classified defendant as a third-felony offender by counting a single prior conviction twice; in fact, defendant was eligible to be charged only as a second-offense habitual offender. The trial court, Mark A. Trusock, J., sentenced defendant at the top of the agreed-upon guidelines range to 84 months to 60 years in prison. Defendant later moved to withdraw her plea, arguing that it was involuntary and unknowing given that defendant was told she was avoiding a third-offense habitual-offender enhancement. The trial court denied the motion, agreeing with the prosecution that defendant had received benefit from the plea despite the error. The Court of Appeals (TUKEL, P.J., and K. F. KELLY and GADOLA, JJ.) affirmed the trial court's denial of defendant's motion in an unpublished per curiam opinion. Defendant applied for leave to appeal in the Supreme Court, and the Court ordered and heard oral argument on the application. 509 Mich 920 (2022).

In an opinion by Justice WELCH, joined by Justices BERNSTEIN, CAVANAGH, and BOLDEN, the Supreme Court *held*:

The misinformation regarding defendant's habitual-offender enhancement rendered defendant's guilty plea involuntary and unknowing. Accordingly, the case had to be remanded to the trial court to give defendant the opportunity to elect to allow her plea to stand or withdraw her plea.

1. The Fourteenth Amendment requires that a guilty or no-contest plea by a defendant be voluntary and knowing. These requirements are incorporated by MCR 6.302, which provides that a court may not accept a plea of guilty or no contest unless it is convinced that the plea is "understanding, voluntary, and accurate." Courts must substantially comply with the requirements of MCR 6.302. Caselaw provides that automatic invalidation of a plea due to a

violation of MCR 6.302 is only required if the defendant establishes that the waiver was not understandingly or voluntarily made. For a plea to be voluntarily and knowingly given, the accused must be fully aware of the direct consequences of the plea. Further, under *Brady v United States*, 397 US 742 (1970), the waiver of constitutional rights that are implicated in accepting a plea must be a knowing and intelligent act done with "sufficient awareness of the relevant circumstances and likely consequences." Thus, a trial court may, in certain circumstances, be required to inform a defendant about facts not explicitly required by MCR 6.302 in order to comply with the due-process requirements that the plea be understanding, voluntary, and accurate.

2. In this case, the focal inquiry was not whether defendant received a benefit from the plea deal, but whether she was adequately informed and aware of the relevant circumstances surrounding the entering of the plea and the waiving of constitutional rights. Awareness of the accurate habitual-offender enhancement is clearly a relevant circumstance. Similarly, a plea may not be understanding and voluntary when a defendant is misinformed of the benefits of the plea. Defendant's waiver of her constitutional rights, through her guilty plea, was induced, in part, by the prosecution's and trial court's assertions of an exaggerated benefit of the plea in lieu of proceeding to trial. Defendant was led to believe that her guilty plea would result in the dismissal of a third-offense habitual-offender enhancement—a likely consequence and relevant circumstance of her plea—rather than a second-offense habitual-offender enhancement. Specifically, defendant agreed to the plea deal believing that charges against her in a separate, unrelated case would be dismissed and that the top end of her guidelines minimum sentence range would be reduced by 42 months (from 127 months to 85 months). But the benefit she received in relation to the dismissal of the habitual-offender enhancement, given that she was only a second-offense habitual offender and not a third-offense habitual offender, was a reduction of only 21 months from the top end of her minimum sentence range (from 106 months to 85 months). Thus, the misinformation had a significant impact on what defendant believed her minimum sentence could have been if she had proceeded to trial. The trial court made an error of law and thus abused its discretion by not allowing defendant to withdraw her plea in light of this misinformation. Because of the misinformation, defendant did not appreciate what she was avoiding by pleading guilty, and therefore, her plea was not made understandingly or voluntarily.

3. When a prosecutor seeks an enhanced sentence, it is their responsibility to ensure that the defendant receives notice and that such a sentence is legally permissible. It is not the defendant's obligation to remember the specific details of their criminal history in order to ensure that the charging information is correct. The mere fact that a defendant *may* correct their criminal record under MCL 769.13(4) does not absolve the prosecution of its responsibility to provide accurate notice to the defendant. It is the burden of the prosecution to properly notify a defendant of their habitual-offender status.

Part III of the Court of Appeals opinion reversed, remainder of the Court of Appeals opinion vacated, and case remanded to the trial court to give defendant the opportunity to elect to allow her plea to stand or withdraw her plea.

Justice ZAHRA, dissenting, joined by Chief Justice CLEMENT and Justice VIVIANO, disagreed with the majority that defendant's plea was not understanding and voluntary. Defendant was fully informed of the penalties and direct consequences of her plea, and she received precisely what she bargained for: a within-guidelines sentence, calculated without any increase of the upper limit of the recommended minimum sentence range required for habitual offenders. Justice ZAHRA would have held that a defendant's misunderstanding as to one portion of an overall favorable plea deal does not necessarily render the entire deal unknowing and involuntary; rather, the trial court that entered the plea should assess the extent of the misinformation or misunderstanding in the context of the entire plea to determine whether the plea was understanding and voluntary and whether the defendant was indeed misled. In this case, any misunderstanding as to defendant's habitual-offender status did not render her plea unknowing or involuntary, particularly in light of the substantial benefits she received from the deal. Moreover, considering the plea in its entirety, defendant was sufficiently aware of the overall benefits of the bargain such that she was able to voluntarily make an informed decision to enter the plea with an adequate understanding of its consequences. While defendant may have been misinformed as to the precise value of her plea deal, any misunderstanding as to her habitual-offender status did not render her entire plea unknowing, involuntary, or inaccurate such that the trial court was required to allow her the opportunity to withdraw it. Further, this case did not involve a misunderstanding that required knowledge of substantive law or court procedure to uncover. The number of previous felonies defendant had committed was part of her personal criminal history; therefore, whether she could have been convicted as a second- or third-offense habitual offender was something she should have known. Regardless, due process does not require a per se rule that any misunderstanding in a plea agreement renders the plea unknowing and involuntary. Especially given that trial courts may deny requests for plea withdrawal based on substantive compliance with MCR 6.302, the extent of the misunderstanding should matter in determining whether a plea was understanding, voluntary, and accurate and whether a defendant was sufficiently aware of the relevant circumstances and likely consequences of a plea.

# OPINION

Chief Justice:
    Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 18, 2023

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                     No. 163700

CANDACE RENEE GUYTON,

    Defendant-Appellant.

BEFORE THE ENTIRE BENCH

WELCH, J.

In this case, we must decide whether defendant Candace Renee Guyton's guilty plea was unknowing and involuntary because it was based on inaccurate information, thus rendering the plea constitutionally defective. Defendant pleaded guilty to one count of armed robbery, MCL 750.529, in exchange for multiple benefits, including the dismissal of the supplemental information charging her as a third-offense habitual offender. Defendant argues that her plea deal was flawed because she could only be validly charged

as a second-offense habitual offender. We agree, and we hold that this erroneous information conveyed during defendant's plea proceedings and the legally flawed agreement that followed render her guilty plea invalid. Therefore, we reverse Part III of the Court of Appeals opinion addressing plea withdrawal, vacate the remainder of the opinion, and remand this case to the Kent Circuit Court to give defendant the opportunity to elect to withdraw her invalid guilty plea. MCR 6.310(C)(3).

## I. BACKGROUND

### A. FACTUAL AND PROCEDURAL HISTORY

Defendant and codefendant Kenneth Agnew were charged with attempted robbery of a Popeye's fast-food restaurant. They were both accused of having worn masks, and Agnew was accused of showing an employee what appeared to be a gun while defendant carried a plastic bag. When the employee resisted opening the cash register, defendant and Agnew allegedly fled the store. According to witness testimony presented by the prosecution at the preliminary examination, the "gun" that Agnew displayed was actually a toy gun that Agnew had stolen from a Meijer store that same night. Defendant maintained that she did not know what Agnew had taken from the Meijer store. She was not armed with any weapon. The Grand Rapids Police Department recovered Agnew's phone from an Olive Garden, where he had allegedly acted alone in a robbery earlier that same day. When questioned by the police, Agnew implicated defendant in the attempted robbery of the Popeye's. Defendant thereafter admitted her involvement in the robbery to another officer and in jail phone calls with Agnew.

Defendant subsequently pleaded guilty to one count of armed robbery, MCL 750.529. In exchange for the plea, the prosecution agreed not to pursue charges in an

2

unrelated case and to recommend a sentence within the guidelines minimum range of 51 to 85 months' imprisonment. In addition, the prosecution agreed to dismiss the supplemental information charging defendant as a third-offense habitual offender. However, critical to this appeal, defendant was not legally eligible to be charged as a third-offense habitual offender at the time of the plea offer. Instead, she was only eligible to be charged as a second-offense habitual offender due to a prior drug offense. The amended charging information incorrectly classified defendant as a third-felony offender by double-counting a single prior conviction. Neither the prosecutor nor the trial court corrected this error or informed defendant of it.

The trial court sentenced defendant to the top of the agreed-upon guidelines range: 84 months to 60 years' imprisonment. For his role in the incident, codefendant Agnew, who had a prior armed robbery conviction, was sentenced pursuant to a plea agreement to 51 months to 80 years' imprisonment for armed robbery. In a postconviction motion, defendant requested to withdraw her plea, arguing that it was involuntary and unknowing given that the prosecutor had incorrectly informed her that she was avoiding a third-offense habitual offender enhancement. Alternatively, defendant argued that she was entitled to resentencing because she was sentenced on the basis of an inaccurate assumption that Agnew had a real, functioning, and lethal gun. Defendant requested that the trial court correct the presentence investigation report (PSIR) to clarify that the "gun" in Agnew's possession was fake.

The trial court denied the motion for plea withdrawal, agreeing with the prosecution that defendant received the benefits of the plea bargain. The court also denied defendant's request for resentencing, reasoning that it did not matter whether the gun was real or fake

3

because it did not rely on that information in sentencing defendant. The trial court did, however, order that a supplement to the PSIR could be submitted explaining that the Popeye's employee did not think that the alleged gun flashed by Agnew was real.

On direct appeal, the Court of Appeals affirmed the denial of defendant's motion to withdraw her guilty plea. *People v Guyton*, unpublished per curiam opinion of the Court of Appeals, issued September 2, 2021 (Docket No. 354221), pp 2-4. The panel first noted that defendant's guidelines minimum sentence range without enhancement was 51 to 85 months' imprisonment. The top end of that minimum sentence range would have increased to 106 months if defendant had been charged as a second-offense habitual offender and to 127 months if she had been charged as a third-offense habitual offender. MCL 777.21; MCL 777.62.

The Court of Appeals noted that defendant had agreed to the plea deal believing that charges against her in a separate, unrelated case would be dismissed and that the top end of her guidelines minimum sentence range would be reduced from 127 months (as an alleged third offender) to 85 months. But with the correct second-offense habitual offender enhancement, the top end of her minimum sentence range would have been 106 months. Thus, the misinformation led defendant to believe that, by taking the deal, the top end of her recommended minimum sentence would be reduced by 42 months. But the benefit she actually received, given that she was a second-offense habitual offender and not a third-offense habitual offender, was a reduction of only 21 months from the top end of her minimum sentence range. The Court of Appeals panel thus acknowledged that defendant did not receive the actual benefit of the bargain she thought she had struck. It concluded, however, that defendant still obtained significant benefits as a result of the plea. The Court

4

held that, although there were errors in the plea-taking process, the trial court and prosecution substantially complied with MCR 6.302.

Defendant sought leave to appeal in this Court, and we ordered additional briefing and oral argument to address

> whether the appellant's plea was not understanding, accurate and voluntary because the prosecutor misinformed her that by pleading guilty she would not be prosecuted as a third habitual offender when, in fact, she could only have been prosecuted as a second habitual offender. [*People v Guyton*, 509 Mich 920, 920 (2022).]

## B. LEGAL BACKGROUND

A guilty or no-contest plea constitutes a waiver of several constitutional rights and thus triggers specific protections for the defendant. The "Due Process Clause of the Fourteenth Amendment requires that [a] plea be voluntary and knowing." *People v Cole*, 491 Mich 325, 333; 817 NW2d 497 (2012); US Const, Am XIV. Our court rules directly incorporate these due process principles. MCR 6.302(A) ("The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate."). MCR 6.302(B) to (D) set forth the process for courts to follow when accepting plea agreements.

We require courts to substantially comply with the requirements of MCR 6.302, such that " 'whether a particular departure from [MCR 6.302] justifies or requires reversal or remand for additional proceedings will depend on the nature of the noncompliance.' " *People v Saffold*, 465 Mich 268, 273; 631 NW2d 320 (2001) (brackets omitted), quoting *Guilty Plea Cases*, 395 Mich 96, 113; 235 NW2d 132 (1975). See also *People v Brinkey*, 327 Mich App 94, 97-98; 932 NW2d 232 (2019). As the Court of Appeals has previously

held, "[a]utomatic invalidation of a plea due to a violation of MCR 6.302 is only required if the defendant establishes 'that the waiver was neither understandingly nor voluntarily made, not merely that the trial court failed to strictly comply with MCR 6.302(B).' " *Brinkey*, 327 Mich App at 98 (citation omitted).  See also *Saffold*, 465 Mich at 273-274. We have previously said that for a plea to be voluntarily and knowingly given, the accused "must be fully aware of the direct consequences of the plea," and the penalty that will be imposed is "[t]he most obvious 'direct consequence' of a conviction . . . ." *Cole*, 491 Mich at 333-334 (quotation marks and citations omitted).  See also *People v Pointer-Bey*, 321 Mich App 609, 616; 909 NW2d 523 (2017) ("[T]he defendant must be fully aware of the direct consequences of the plea.") (quotation marks and citation omitted).  But that is not the whole story: "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with *sufficient awareness of the relevant circumstances* and likely consequences." *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970) (emphasis added).

It follows that "because the understanding, voluntary, and accurate components of MCR 6.302(A) are premised on the requirements of constitutional due process, a trial court may, in certain circumstances, be required to inform a defendant about facts not explicitly required by MCR 6.302." *People v Blanton*, 317 Mich App 107, 119; 894 NW2d 613 (2016) (quotation marks, citation, and brackets omitted).  The focal inquiry in this particular case is thus not whether defendant received a benefit from the bargained plea agreement, but rather whether defendant was adequately informed and aware of the "relevant circumstances" surrounding the entering of the plea and the waiving of crucial constitutional rights.

6

Awareness of the accurate habitual offender enhancement is clearly a relevant circumstance. We have previously recognized that for a defendant to truly be advised of a maximum possible sentence when entering a plea deal, as required by MCR 6.302(B)(2), the defendant must be advised of the maximum possible prison sentence *as modified by a habitual offender enhancement*. *People v Brown*, 492 Mich 684, 693-694; 822 NW2d 208 (2012). Otherwise, the defendant has not been advised of the true potential maximum sentence. *Id*. at 694. Specifically, we held in *Brown* that because the defendant was not advised of the consequences of a habitual offender enhancement, he was not accurately informed of the consequences of his plea, his plea was not understanding, and he was entitled to withdraw his plea if he chose. *Id*. at 701-702.

Similarly, depending on the circumstances, a plea may not be understanding and voluntary when a defendant is misinformed of the benefits of the plea. See *People v Graves*, 207 Mich App 217, 219-220; 523 NW2d 876 (1994) (holding that, when the prosecution promised to dismiss a charge with which the defendant could not legally be charged, the defendant was entitled to withdraw his guilty plea because the plea was not understanding and voluntary). "There is no absolute right to withdraw a guilty plea once the trial court has accepted it." *People v Patmore*, 264 Mich App 139, 149; 693 NW2d 385 (2004). However, both our common law and MCR 6.310 give a trial court discretion to grant or deny a motion to withdraw a plea after sentencing. *People v Davidovich*, 463 Mich 446, 451; 618 NW2d 579 (2000). To withdraw a plea, a defendant must establish "an error in the plea proceeding that would entitle the defendant to have the plea set aside[.]" MCR 6.310(C)(3).

7

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

When reviewing a trial court's denial of a defendant's motion to withdraw a guilty plea, we must determine if the trial court abused its discretion.  *Brown*, 492 Mich at 688. A trial court "abuses its discretion if its decision falls outside the range of principled outcomes."  *People v Shami*, 501 Mich 243, 251; 912 NW2d 526 (2018) (quotation marks and citations omitted).

### B.  DEFENDANT'S PLEA WAS NOT UNDERSTANDING OR VOLUNTARY

Our court rules are designed to comply with the Due Process Clause of the Fourteenth Amendment.  See MCR 6.302; US Const, Am XIV; *Blanton*, 317 Mich App at 119.  While due process protections require that all pleas are "understanding, voluntary, and accurate," and MCR 6.302(A) incorporates these constitutional requirements, the rules themselves provide little guidance on the specific issue presented in this case.  For example, our court rules are very clear that the failure of a court to advise a defendant of a minimum and maximum penalty for their offense renders a plea unknowing.  See MCR 6.302(B)(2) ("[T]he court must advise the defendant . . . and determine that each defendant understands . . . the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law[.]"); see also *Blanton*, 317 Mich App at 119.  But ensuring an individual defendant actually understands the relevant circumstances and likely consequences of pleading guilty sometimes obligates the trial court to go beyond what the court rules require.  Indeed, we have explicitly held that an applicable habitual offender sentence enhancement is a direct consequence of a guilty plea and that such information should be conveyed to defendants during their plea proceedings, even though

8

it is not explicitly required by MCR 6.302. *Brown*, 492 Mich at 693-694 & n 35, 701-702. See also *People v Shelton*, 412 Mich 565, 569; 315 NW2d 537 (1982) (recognizing that "[t]he purpose of requiring a prosecutor to proceed 'promptly' to file the [habitual offender notice] is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense").

The question we are presented with here is not about defendant having a *lack* of information. Rather, the question we must address is the effect that *inaccurate* information has on a guilty plea's validity. Stated differently, can a plea be understanding or knowingly entered into when it was, in significant part, induced on the basis of an inaccurate understanding of the minimum and maximum possible prison sentence? We hold that it cannot be.

As stated above, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with *sufficient awareness of the relevant circumstances* and likely consequences." *Brady*, 397 US at 748 (emphasis added). Being advised of the likely consequences of a plea is only one part of the constitutional requirement. Generally, a defendant must have "sufficient awareness of the relevant circumstances." *Id*. When a defendant has been misinformed by prosecutors about the benefit of the bargain they have struck, the defendant does not have sufficient awareness of the relevant circumstances.

In *People v Lawson*, 75 Mich App 726, 729-730; 255 NW2d 748 (1977), the defendant was told that the plea offer included the prosecution's promise not to request consecutive sentences, even though the crime to which he agreed to plead only allowed for concurrent sentencing. The Court in *Lawson* concluded that the defendant had accepted

9

the plea on the basis of "an exaggerated belief in the benefits of his plea and that nothing was done by the court, the prosecutor or his counsel to correct his misapprehension." *Id*. at 730, citing *Hammond v United States*, 528 F2d 15, 19 (CA 4, 1975). The court then held that because the "defendant surrendered his right to trial in apparent misapprehension of the value of commitments made to him, he should be allowed to withdraw his plea." *Lawson*, 75 Mich App at 730.

We conclude that, like in *Lawson*, defendant's waiver of her constitutional rights through her guilty plea was induced, in part, by the prosecution's and trial court's assertions of an exaggerated benefit of the plea in lieu of proceeding to trial. Specifically, defendant was led to believe that her guilty plea would result in the dismissal of a third-offense habitual offender sentence enhancement—a likely consequence and relevant circumstance of her plea—when she was subject only to a second-offense habitual offender enhancement. This had a significant practical impact on what defendant perceived her minimum sentence could have been if she had proceeded to trial. As in *Lawson*, there was no correction on the record of the misinformation by the prosecutor, judge, or defense attorney. To not allow defendant to withdraw her plea was an error of law and an abuse of discretion by the trial court. See *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (stating that the trial court necessarily abuses its discretion when it makes an error of law). The Court of Appeals likewise erred by affirming her conviction.

As the Court of Appeals noted in this case, "the misinformation led defendant to believe that her bargain included insulating her minimum sentence from potentially 42 additional months [3.5 years], when the benefit she actually received was insulation from potentially just 21 additional months [1.75 years]." *Guyton*, unpub op at 4. The difference

10

of nearly two years between the potential minimum sentence defendant thought she was avoiding and what she would actually avoid was significant. This was a relevant circumstance of the plea. Rather than focusing on whether a defendant receives any benefit from the bargained-for plea, like the Court of Appeals and dissent do in this case, *Lawson* provides a better methodology for evaluating this type of error in the plea-taking process. Based on the inaccurate third-offense habitual offender charging information, defendant had an exaggerated belief in the benefits of the plea agreement, and she consequently accepted the agreement to avoid a sentence that could not legally be applied to her. And again, like in *Lawson*, no one did anything to correct defendant's exaggerated belief.

The prosecution's error affected the terms of defendant's plea agreement, and defendant was not informed of this error before entering her plea. In turn, this misinformation led defendant to bargain for the dismissal of her habitual offender enhancement without "sufficient awareness of the relevant circumstances" because the prosecution, regardless of whether the error was unintentional, exaggerated the degree of enhancement.[1] *Brady*, 397 US at 748.[2] It is also notable that defendant's lack of sufficient

---

[1] The inaccurate third-offense habitual offender notice filed in this case appears to have been an unintentional mistake. The record contains no information to the contrary. Nonetheless, that has no bearing on our analysis.

[2] Notably, we do not hold that defendant's plea was illusory. Recently, we stated: "A defendant may be entitled to withdraw a guilty plea if the bargain on which the plea was based was illusory, meaning that the defendant received *no* benefit from the agreement." *People v Stovall*, 510 Mich 301, 311; 987 NW2d 85 (2022) (quotation marks omitted; emphasis added), quoting *People v Harris*, 224 Mich App 130, 132; 568 NW2d 149 (1997). Defendant here bargained to avoid a habitual offender enhancement and another armed robbery charge. Therefore, she did receive some benefit from her plea, even though the benefit was exaggerated.

awareness was shared by the prosecution and trial court in this case, neither of which acknowledged that the error occurred during the plea-taking process. This affected the voluntariness and defendant's understanding of her guilty plea because defendant and the prosecution were not bargaining with a full understanding of the factual circumstances if the case proceeded to trial. In other words, defendant did not appreciate what she was truly avoiding by pleading guilty. Given this fundamental misapprehension of the likely consequences and relevant circumstances of her guilty plea, we conclude that defendant's plea was not understandingly or voluntarily made.

The dissent believes that that this opinion opens the floodgates and that "any misinformation provided to a defendant, no matter how *de minimis*, is seemingly sufficient to set aside a plea." We disagree. The mistake here was not a minor one. In this case, a clear legal error regarding the applicability of habitual offender notices misled defendant into believing that her potential minimum sentence was far greater than what was legally possible. Her plea was therefore involuntary and unknowing. Not every mistake or misunderstanding in the plea process will rise to the level of being involuntary or unknowing, but because the legal error in this case was both clear and significant, we find that defendant's plea was involuntary and unknowing. It is beyond the scope of this opinion to determine what other errors might undermine a plea, but we do not hold that any minor error will invalidate otherwise valid pleas.

As a final matter, we reject the prosecution's and the dissent's argument that defendant should have been aware of her own criminal history and its impact on her habitual offender status and that she is now inappropriately using her lack of diligence to appeal. When a prosecutor seeks an enhanced sentence, it is their responsibility to ensure

12

that the defendant receives notice and that such a sentence is legally permissible. See MCL 769.13(1) ("In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant . . . by filing a written notice of his or her intent to do so . . . ."); MCL 769.13(2) ("A notice of intent to seek an enhanced sentence . . . shall list the prior conviction or convictions that will or may be relied upon for the purposes of sentence enhancement."). Criminal records can be complicated, given that one criminal episode often includes multiple charges. The obligation does not fall upon defendants to remember the specific details of their prior record.[3] The mere fact that a defendant *may* correct their criminal record, MCL 769.13(4), does not absolve the prosecution of its responsibility to provide accurate notice to a defendant. In short, it is the prosecution that bears the burden of properly notifying a defendant of their habitual offender status. Further, the dissent's assertion that defendants may now use a misunderstanding during plea proceedings as an appellate parachute is unpersuasive. There would be no reason for a defendant to hide information during plea proceedings that would help the defendant potentially obtain a better plea deal. Defendant here would have had the advantage of negotiating with a greater understanding of how much prison time she actually faced instead of having to go through a prolonged appellate process in which the end result would be, at best, a plea withdrawal. Defendants and their counsel well understand that they are better served by negotiating with accurate information from the onset.

---

[3] For example, if a defendant engaged in armed robbery, they could plead to multiple crimes that all arose out of that one robbery. While a defendant may understand that they pleaded to the crime, they may not remember how many felonies or misdemeanors arose out of a single plea proceeding.

13

### III. CONCLUSION

The misinformation regarding defendant's habitual offender enhancement and the failure by the court, prosecutor, and defense attorney to correct the record rendered her plea involuntary and unknowing. Therefore, we reverse Part III of the Court of Appeals' opinion, vacate the remainder of the opinion, and remand to the trial court for proceedings not inconsistent with this opinion. In particular, the defendant must be given the opportunity to elect to allow her plea to stand or withdraw her plea. MCR 6.310(C)(3).

We do not retain jurisdiction.

Elizabeth M. Welch
Richard H. Bernstein
Megan K. Cavanagh
Kyra H. Bolden

14

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                      No. 163700

CANDACE RENEE GUYTON,

      Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

      I respectfully dissent. Defendant pleaded guilty to armed robbery pursuant to a plea agreement.[1] In exchange for defendant's guilty plea, the prosecutor agreed to dismiss a separate armed-robbery case in its entirety, as well as a third-offense habitual-offender enhancement in the present case. The prosecutor also agreed that defendant would receive a minimum sentence within the guidelines range of no more than 51 to 85 months in prison. Defendant was subsequently sentenced within the agreed-upon guidelines minimum sentence range to 84 months to 60 years in prison. After sentencing, defendant sought to withdraw her guilty plea upon discovering that she qualified only as a second-offense habitual offender, not a third-offense habitual offender,[2] explaining that she did not understand the full context of her plea agreement. The trial court denied defendant's

_____

[1] MCL 750.529.

[2] Defendant was only eligible to be charged as a second-offense habitual offender at the time of the plea offer. The amended charging information incorrectly classified defendant as a third-felony offender by double-counting a single prior conviction.

motion, finding that defendant's guilty plea was understanding, voluntary, and knowing despite the mistake regarding her habitual-offender status. The Court of Appeals affirmed the trial court on this issue.[3] The majority now reverses this portion of the Court of Appeals' opinion, holding that the misinformation regarding defendant's habitual-offender enhancement and the failure by the court, prosecutor, and defense attorney to correct the record rendered defendant's plea involuntary and unknowing.

In holding that defendant's misunderstanding as to one portion of her overall favorable plea deal rendered the entire deal unknowing and involuntary, the majority comes dangerously close to applying a per se rule that a defendant is entitled to withdraw his or her plea whenever he or she is misinformed as to any nuance or "relevant circumstance" that goes into a plea deal, no matter how slight. Instead, I believe that assessing the nature of the misinformation and the extent of the misunderstanding in the context of the plea in its entirety is necessary to determine whether the plea was understanding and voluntary. Such an assessment should be done first by the trial court that took the plea and had an opportunity to assess the underlying proceedings and whether the defendant was indeed misled. Here, I conclude that any misunderstanding as to defendant's habitual-offender status did not render her plea unknowing or involuntary, particularly in light of the substantial benefits that defendant undisputedly received by entering into the plea agreement.[4] Considering defendant's plea deal in its entirety, defendant was sufficiently

---

[3] *People v Guyton*, unpublished per curiam opinion of the Court of Appeals, issued September 2, 2021 (Docket No. 354221).

[4] Additionally, the fact that information about defendant's prior convictions was known or should have been known to her works substantially against her claim of appeal.

2

aware of the overall benefits of the bargain such that she was able to voluntarily make an informed decision to enter the plea with an adequate understanding of the consequences of that plea.[5]  I would therefore conclude that the trial court did not abuse its discretion by denying defendant's motion to withdraw her plea.  I would affirm the judgment of the Court of Appeals.

## I.  LEGAL BACKGROUND

"There is no absolute right to withdraw a guilty plea once the trial court has accepted it."[6]  A request to withdraw a plea after sentencing is controlled by MCR 6.310(C), which requires a defendant to establish an error in the plea proceedings.  MCR 6.310(C)(3) provides:

> If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea.  If the defendant elects to allow the plea and sentence to stand, the additional advice given and inquiries made become part of the plea proceeding for the purposes of further proceedings, including appeals.

Plea proceedings are governed by MCR 6.302, which provides, in relevant part, as follows:

> (A) Plea Requirements.  The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding,

---

[5] See *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970) (holding that, in order to constitute a valid plea, the plea must be a voluntary and a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences").

[6] *People v Patmore*, 264 Mich App 139, 149; 693 NW2d 385 (2004).

3

voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out subrules (B)-(E).

(B) An Understanding Plea. Speaking directly to the defendant or defendants, the court must advise the defendant or defendants of the following and determine that each defendant understands:

(1) the name of the offense to which the defendant is pleading; the court is not obliged to explain the elements of the offense, or possible defenses;

(2) the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law . . . ;

(3) if the plea is accepted, the defendant will not have a trial of any kind, and so gives up the rights the defendant would have at a trial . . . [;]

\* \* \*

(4) if the plea is accepted, the defendant will be giving up any claim that the plea was the result of promises or threats that were not disclosed to the court at the plea proceeding, or that it was not the defendant's own choice to enter the plea[.]

\* \* \*

(C) A Voluntary Plea.

(1) The court must ask the prosecutor and the defendant's lawyer whether they have made a plea agreement. If they have made a plea agreement, which may include an agreement to a sentence to a specific term or within a specific range, the agreement must be stated on the record or reduced to writing and signed by the parties. The parties may memorialize their agreement on a form substantially approved by the [State Court Administrative Office]. The written agreement shall be made part of the case file.

(2) If there is a plea agreement, the court must ask the prosecutor or the defendant's lawyer what the terms of the agreement are and confirm the terms of the agreement with the other lawyer and the defendant.

\* \* \*

4

(4) The court must ask the defendant:

(a) (if there is no plea agreement) whether anyone has promised the defendant anything, or (if there is a plea agreement) whether anyone has promised anything beyond what is in the plea agreement;

(b) whether anyone has threatened the defendant; and

(c) whether it is the defendant's own choice to plead guilty.

(D) An Accurate Plea.

(1) If the defendant pleads guilty, the court, by questioning the defendant, must establish support for a finding that the defendant is guilty of the offense charged or the offense to which the defendant is pleading.

* * *

(E) Additional Inquiries. On completing the colloquy with the defendant, the court must ask the prosecutor and the defendant's lawyer whether either is aware of any promises, threats, or inducements other than those already disclosed on the record, and whether the court has complied with subrules (B)-(D). If it appears to the court that it has failed to comply with subrules (B)-(D), the court may not accept the defendant's plea until the deficiency is corrected.

MCR 6.302(A)'s requirement that a plea be "understanding, voluntary, and accurate" is "premised on the requirements of constitutional due process . . . ."[7] Strict compliance with MCR 6.302 is not required.[8] Rather, this Court has "adopted a doctrine of substantial compliance," and " 'whether a particular departure [from the requirements of MCR 6.302] justifies or requires reversal or remand for additional proceedings will depend on the nature of the noncompliance.' "[9] "Automatic invalidation of a plea due to a

---

[7] *People v Cole*, 491 Mich 325, 332; 817 NW2d 497 (2012).

[8] *People v Brinkey*, 327 Mich App 94, 98; 932 NW2d 232 (2019).

[9] *People v Saffold*, 465 Mich 268, 273; 631 NW2d 320 (2001) (brackets omitted), quoting *Guilty Plea Cases*, 395 Mich 96, 113; 235 NW2d 132 (1975).

5

violation of MCR 6.302 is only required if the defendant establishes 'that the waiver was neither understandingly nor voluntarily made, not merely that the trial court failed to strictly comply with MCR 6.[3]02(B).' "[10]  "In order for a plea to be voluntary and understanding, the defendant must be fully aware of the direct consequences of the plea."[11] "The penalty to be imposed is the most obvious direct consequence of a conviction."[12] "Therefore, MCR 6.302(B)(2) requires the trial court to advise a defendant, prior to the defendant's entering a plea, of 'the maximum possible sentence for the offense and any mandatory minimum sentence required by law . . . .' "[13]  "When a defendant is not fully informed about the penalties to be imposed, there is a clear defect in the plea proceedings because the defendant is unable to make an understanding plea under MCR 6.302(B)."[14]

## II.  ANALYSIS

I would affirm the judgment of the Court of Appeals.  While I agree with the prosecution that the trial court substantially complied with MCR 6.302, substantial compliance is not the sole inquiry.  Even a plea that complies with this rule might be invalid and subject to withdrawal under due-process requirements if it was not understanding,

---

[10] *Brinkey*, 327 Mich App at 98 (citation omitted).

[11] *People v Pointer-Bey*, 321 Mich App 609, 616; 909 NW2d 523 (2017) (quotation marks and citation omitted).

[12] *Id*. (quotation marks and citation omitted).

[13] *Id*., quoting *People v Brown*, 492 Mich 684, 689; 822 NW2d 208 (2012).

[14] *People v Blanton*, 317 Mich App 107, 119; 894 NW2d 613 (2016) (quotation marks and citation omitted).

voluntary, and accurate.[15] Nonetheless, I disagree with the conclusion expressed in the majority opinion that defendant's plea was not understanding and voluntary. While defendant may have been misinformed as to the precise value of her plea deal, any misunderstanding as to her habitual-offender status did not render her entire plea unknowing, involuntary, or inaccurate such that the trial court was required to allow her the opportunity to withdraw it.

From the outset, there is no dispute whether defendant was fully informed of the penalties and direct consequences of her plea. She was. That she did not fully comprehend how good of a relative bargain the deal provided does not detract from her knowledge of the direct consequences of the actual plea bargain to which she agreed. She explicitly understood that, in exchange for her plea, she would be sentenced to a minimum sentence within the guidelines range of 51 to 85 months without any sentencing enhancement, and she was aware that a separate case, in which she was charged with armed robbery, would be dismissed. Defendant explicitly informed the trial court that she understood the plea deal. Regardless of whether she was properly charged as a second- or third-offense habitual offender, defendant received precisely what she bargained for: a within-guidelines sentence, calculated without any increase of the upper limit of the recommended minimum sentence range required for habitual offenders under MCL 777.21(3)(a) through (c). This

---

[15] See *Cole*, 491 Mich at 332 ("While we agree that MCR 6.302(B) through (E) constitute explicit requirements imposed on a trial court conducting a plea hearing, the broader directive of MCR 6.302(A) that the plea must be 'understanding, voluntary, and accurate' might, in a given proceeding, encompass more than the explicit requirements of the remainder of the court rule. Specifically, the 'understanding, voluntary, and accurate' components of subrule (A) are premised on the requirements of constitutional due process, which might not be entirely satisfied by compliance with subrules (B) through (D).").

is not a case in which a defendant pleaded guilty expecting one sentence and received a much harsher sentence; to the contrary, defendant here received exactly what she bargained for and expected. At no time during the sentencing hearing did she express concern over the terms of her plea bargain.

A majority of this Court nonetheless concludes that defendant's plea was unknowing and involuntary because she misunderstood the precise value of the benefits that she received. That is, the Court concludes that defendant's plea was not understanding or voluntary because "defendant's waiver of her constitutional rights through her guilty plea was induced, in part, by the prosecution's and trial court's assertions of an exaggerated benefit of the plea in lieu of proceeding to trial," which "had a significant practical impact on what defendant perceived her minimum sentence could have been if she had proceeded to trial." According to the majority, "[t]his affected the voluntariness and defendant's understanding of her guilty plea because defendant and the prosecution were not bargaining with a full understanding of the factual circumstances if the case proceeded to trial." I do not contest the legal premise that some misunderstandings during the plea process might render a plea unknowing and involuntary. But this is not such a case.

It should not be lost on anyone that defendant herself was in the very best position to know how many prior felony convictions she had when negotiating and entering into the plea agreement. Unlike a misunderstanding that requires knowledge of substantive law or court procedure to uncover, whether defendant could have been convicted as a second- or third-offense habitual offender in light of the number of her previous felonies was a fact that she either knew or should have known given that it was part of her personal criminal history. The majority places the full responsibility for this error on the prosecution, citing

8

the statutory subsections allowing the prosecution to file a notice that it is seeking to enhance a defendant's sentence as a habitual offender.[16]  However, the majority fails to acknowledge the subsection of the statute that allows a defendant to file a motion challenging the accuracy of the prior convictions listed in the habitual-offender notice.[17] This is not to say that the statute placed the burden on defendant to inform the court of her habitual-offender status.  Still, it must be acknowledged that the very misinformation that defendant relies on in arguing that her plea was unknowing and involuntary was a misstatement of her own prior criminal history, which was already known or should have been known to her and which, under the statute, she had the ability to correct.[18]

In any event, assuming that defendant was indeed unaware of her habitual-offender enhancement status, I cannot agree with her that *any* misunderstanding as to the terms or benefits of a plea agreement entitles a defendant to the opportunity to withdraw that plea. Due process simply does not require a per se rule that any misunderstanding in a plea agreement, no matter how slight, renders the plea unknowing and involuntary.  Instead, courts must consider the extent of any misunderstanding in the context of the plea deal in

---

[16] See MCL 769.13(1) and (2).

[17] See MCL 769.13(4).

[18] See *United States v Spencer*, 836 F2d 236, 239 (CA 6, 1987) ("[W]here a defendant is aware of the condition or reason for a plea withdrawal, at the time the guilty plea is entered, a case for withdrawal is weaker.").

Under the Court's holding, it certainly is not hard to imagine that a defendant might notice an error in a proffered plea bargain but decline to immediately bring that error to the court's attention in the hope that he or she can use that error to later attempt to withdraw the plea, long after witnesses have moved and memories have faded.  The majority's holding might therefore incentivize defendants to harbor errors such as this one to use as an appellate parachute.

9

its entirety. As noted earlier, trial courts have the ability to deny requests for plea withdrawal based on substantial compliance with MCR 6.302[19]—which is explicitly designed to require understanding, voluntary, and accurate pleas; thus, the extent of the misunderstanding should matter in determining whether a plea was understanding, voluntary, and accurate.

While there is little Michigan jurisprudence on point, caselaw from the Supreme Court of the United States supports the principle that a plea is not per se invalidated when the defendant is misinformed about one of the benefits he or she is to receive under the deal. In *Brady v United States*, the Supreme Court explained that, in order to constitute a valid plea, the plea must be a voluntary and "knowing, intelligent act[] done with *sufficient awareness* of the relevant circumstances and likely consequences."[20] The Court also noted that "[t]he voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it."[21] The Supreme Court in *Santobello v New York* explained that if a plea "was induced by promises, the essence of those promises must in some way be made known."[22] This caselaw supports the proposition that a defendant does not need complete awareness of the relevant circumstances and likely consequences of a plea; rather, "sufficient awareness" is all that is required.[23] *Santobello*'s focus on the

---

[19] See *Brinkey*, 327 Mich App at 98.

[20] *Brady v United States*, 397 US at 748 (emphasis added).

[21] *Id*. at 749.

[22] *Santobello v New York*, 404 US 257, 261-262; 92 S Ct 495; 30 L Ed 2d 427 (1971).

[23] *Brady*, 397 US at 748.

10

"essence" of the prosecution's promise similarly implies that there is room for some misunderstanding as to the benefits of a plea deal.

On this point, I find instructive *Hammond v United States*.[24] There, defense counsel informed the defendant that he faced a 90- or 95-year-sentence if he went to trial, when in actuality his maximum sentence could have only been 55 years.[25] The defendant pleaded guilty pursuant to a plea bargain with a maximum sentence of 25 years and received a sentence of 20 years.[26] The court in *Hammond* concluded that defense counsel's bad advice was so severe that the defendant may have been induced to enter a guilty plea that he otherwise would not have entered had he been given proper advice regarding the maximum sentence that he faced.[27] The court cautioned that not "every item of misinformation which counsel may impart vitiates the voluntariness of a plea. Each case must depend largely on its own facts. A mistake of a few years in advice about the length of what would otherwise be a long term would not constitute ineffectiveness of counsel."[28] Instead, it was the fact that defense counsel's advice "grossly exaggerated the benefit to be derived from the pleas of guilty" that rendered the pleas not voluntary as a product of the ineffective assistance of counsel.[29] Although *Hammond* pertained to ineffective assistance of counsel, our Court of

---

[24] *Hammond v United States*, 528 F2d 15 (CA 4, 1975).

[25] *Id*. at 16-17.

[26] *Id*. at 16.

[27] *Id*. at 18.

[28] *Id*.

[29] *Id*. at 19.

Appeals has applied it outside that context when addressing an argument that a plea was not voluntary because of inducements made by the prosecution.[30] All of this supports my view that the extent of any misinformation or misunderstanding matters in assessing whether a defendant's plea was voluntary and understanding.

A majority of this Court assures that "[n]ot every mistake or misunderstanding in the plea process will rise to the level of being involuntary or unknowing" and that it does "not hold that any minor error will invalidate otherwise valid pleas." Yet the majority comes extremely close to applying the very type of bright-line rule that it denounces. The majority initially says that a plea cannot "be understanding or knowingly entered into when it was, *in significant part*, induced on the basis of an inaccurate understanding of the minimum and maximum possible prison sentence[.]"[31] But the majority opinion then goes on to contradict itself by holding that defendant's guilty plea must be set aside because it "was induced, *in part*, by the prosecution's and trial court's assertions of an exaggerated benefit of the plea in lieu of proceeding to trial" and concluding that the misunderstanding had a "significant practical impact on what defendant perceived her minimum sentence could have been if she had proceeded to trial."[32] Under the analysis expressed in the

---

[30] See *People v Lawson*, 75 Mich App 726; 255 NW2d 748 (1977).

[31] Emphasis added.

[32] Emphasis added. In reaching its holding, the majority relies on *Brown* and *Lawson*. I believe that both cases are distinguishable.

In *Brown*, the defendant pleaded guilty as a second-offense habitual offender to second-degree home invasion in exchange for dismissal of other charges. *Brown*, 492 Mich at 687-688. The defendant was informed that the maximum sentence for his second-degree home-invasion charge was up to 15 years in prison. *Id*. at 688. But because of the habitual-offender enhancement, he was ultimately sentenced to a prison term of 6 years and 3

majority opinion, any misinformation provided to a defendant, no matter how *de minimis*,

is seemingly sufficient to set aside a plea. After all, any misinformation can "in part"

months to 22 years and 6 months, a significantly higher potential maximum sentence than the 15-year sentence he was told was the maximum sentence. *Id*. This Court agreed with the defendant that he should be given the opportunity to withdraw his plea, concluding that "before pleading guilty, a defendant must be notified of the maximum possible prison sentence with habitual-offender enhancement because the enhanced maximum becomes the 'maximum possible prison sentence' for the principal offense." *Brown*, 492 Mich at 693-694.

Unlike *Brown*, this is not a case in which the trial court completely failed to inform defendant that her otherwise applicable maximum possible sentence would necessarily be enhanced by her habitual-offender status. Instead, defendant was informed of the exact guidelines range that she would receive, *without* any habitual-offender enhancement, and that is indeed the sentence she received. Defendant was not led to believe that her potential sentence would be one term, when in actuality it would be much greater with the habitual enhancement. Defendant received the exact sentencing range that she bargained for; that range simply did not provide quite the benefit that she thought it did. Nothing in *Brown* stands for the proposition that this type of misunderstanding *requires* that a defendant be given the opportunity to withdraw his or her plea.

Nor is *Lawson* dispositive. The Court of Appeals in *Lawson* actually quoted *Hammond*'s standard that " '[w]here . . . counsel's alleged advice, corroborated by the information supplied by the court, *grossly exaggerated* the benefit to be derived from the pleas of guilty, it would follow that the pleas were not voluntary.' " *Lawson*, 75 Mich App at 730 (emphasis added), quoting *Hammond*, 528 F2d at 19. In concluding that the defendant must be allowed to withdraw his plea of guilty because the prosecutor had promised not to request consecutive sentences, but the possibility of consecutive terms for the crimes committed did not exist, the Court of Appeals in *Lawson* did not at all suggest that any misunderstanding in the plea process requires the opportunity for withdrawal. Indeed, its quotation of the *Hammond* "grossly exaggerated" standard suggests the opposite. And in *Lawson*, the prosecutor's promise to forgo consecutive sentences constituted a key part of the plea agreement. As will be discussed below, the misunderstanding in this case was not nearly so significant.

13

induce a plea. And in applying its test, I am not sure that the majority leaves any room for the "practical impact" of a misunderstanding to be deemed insignificant.[33]

Moreover, while the majority opinion cites the proper "sufficient awareness of the relevant circumstances and likely consequences" standard from *Brady*,[34] it puts all of its emphasis on the "relevant circumstances" portion of that standard while ignoring the "sufficient awareness" language. The majority concludes that "[w]hen a defendant has been misinformed by prosecutors about the benefit of the bargain they have struck, the defendant does not have sufficient awareness of the relevant circumstances." Under the majority opinion's reasoning, it seems that all aspects of a plea are "relevant" or "factual" circumstances of that plea, and a misunderstanding as to any one of them renders a plea involuntary and unknowing. That is, in merely concluding that defendant's habitual-offender status was a "relevant circumstance" of her plea without going on to analyze whether defendant was sufficiently aware of the entirety of the "relevant circumstances" of the plea, the majority seems to set forth the very per se rule that it denies it is creating, contrary to the totality approach required by *Brady*.[35] I again emphasize that the extent of the misunderstanding is important in assessing a plea in its entirety to determine whether a defendant was *sufficiently* aware of the relevant circumstances and likely consequences of a plea.

---

[33] For example, the majority does not require defendant to explain how correcting this minor error would have impacted the parties' plea negotiations or her willingness to plead guilty.

[34] *Brady*, 397 US at 748.

[35] *Id*. at 749 ("The voluntariness of [a] plea can be determined only by considering *all* of the relevant circumstances surrounding it.") (emphasis added).

Applying this framework to this case, I conclude that any misunderstanding as to defendant's habitual-offender status did not render her plea unknowing or involuntary, particularly in light of the substantial benefits that she undisputedly received by entering into the plea agreement. Framed differently, considering the plea deal in its entirety, defendant was sufficiently aware of the overall benefits of the bargain such that she was able to voluntarily make an informed decision to enter the plea with an adequate understanding of the consequences of that plea.[36]

Again, regardless of whether defendant was properly charged as a second- or third-offense habitual offender, the result of the plea bargain is the same: she received a within-guidelines sentence, calculated without any increase of the upper limit of the recommended minimum sentence range required for habitual offenders under MCL 777.21(3)(a) through (c). Defendant's guidelines minimum sentence range without any enhancement was 51 to 85 months, the upper value of which would have increased to 106 months with a second-offense habitual-offender enhancement and to 127 months with a third-offense habitual-offender enhancement. The benefits of her plea were not "grossly exaggerated" given that the discrepancy between the plea's perceived benefits and its actual benefits was relatively minor.[37] While defendant might have thought that she was avoiding a potential 21 additional months by agreeing to the plea deal, she undisputedly avoided an increased guidelines minimum sentence range from a habitual enhancement by receiving an unenhanced guidelines sentence. Moreover, the dismissal of defendant's other felony case

---

[36] See *Brady*, 397 US at 748.

[37] See *Hammond*, 528 F2d at 19.

15

was itself an extremely meaningful benefit.  In sum, defendant received benefit from the dropping of the second-offense habitual enhancement, in addition to the other significant benefits she received from the agreement.  It stands to reason, then, that while defendant might have been misinformed as to one piece of the plea, she sufficiently understood the overall value of the plea agreement for which she bargained.  I am simply unable to conclude that defendant's misunderstanding as to one piece of her plea—amounting to a potential difference of 21 months in the upper limit of the minimum sentence she was facing—was significant enough to render the entire plea unknowing and involuntary.  The trial court therefore did not abuse its discretion by denying defendant's motion to withdraw her plea.

## III.  CONCLUSION

While defendant was slightly misinformed as to the precise value of the benefits of her plea deal, when considering the plea in its entirety, any misinformation as to defendant's habitual-offender status did not render her entire plea unknowing or involuntary.  In concluding to the contrary, this Court improperly suggests that a defendant is entitled to withdraw his or her plea whenever there is any misunderstanding as to a "relevant circumstance," no matter how slight, in the plea process (even one based on information known to the defendant).  For these reasons, I would affirm the judgment of the Court of Appeals.

Brian K. Zahra
Elizabeth T. Clement
David F. Viviano

16